We'll now hear argument in DiTucci v. Bowser, 19-4107. I think Mr. Brough, Brough, I'm sorry, how do you pronounce your name? It's Brough, your honor, but thank you for asking. Yeah, Brough. Oh, okay, Ruff with a B in front of it. That's how I've explained it all my life, yes. Okay, well, it works for me. You may proceed. Thank you, your honors. May it please the court, again, my name is Dan Brough and I'm here on behalf of the appellants, William Bowser and Gabriel Management Corporation. With the court's permission and subject to its questions, I'd like to aim to reserve three minutes for rebuttal. The question for the panel, an interesting question, I think, is what's the practical difference between... Hold on one second, please. Judge Ide, your microphone is noted as being muted. How's that? Okay, I can hear you. Good, good. Okay, let's start again. Start at 15 minutes. Thank you, your honor. The question before the court, I think it's an interesting and a novel question, is what's the practical difference between a preliminary injunction and a pre-judgment writ of attachment? In this case, the district court entered an order that effectively tied up about $845,000 worth of Mr. Bowser's personal assets, which really are his only assets, prior to the case really even commencing in earnest. And despite the court's denomination of its order as a pre-judgment writ of attachment, the order functions substantively as well as procedurally as a preliminary injunction. And that violates the established rule that courts can't use their equity powers to tie up a defendant's assets at the beginning of the case. And the obvious reasons for that are that the defendant needs to be able to present the defense. So first, the way I would aim to proceed today is to lay out the roadmap as follows. First, if the court concludes as it should, the order is in fact a preliminary injunction, it has one of two ways that it can proceed. First, it can vacate the order because there's no findings supporting a preliminary injunction, including irreparable injury. Second, it can go and address the actual grounds that the district court relied on in entering the order, and there the result will be the same. Those specific conclusions and findings are just simply unsupported. And so it would be for those reasons that we would ask the court to vacate this order. I'll begin with the court's permission just briefly by addressing the jurisdictional question. As a preliminary injunction, the order is appealable. However, the injunction or the order is not denominated as such. There's a few extra points the court will consider. First is whether the order portends, quote, a serious or perhaps irreparable consequence to Mr. Bowser. And then two, whether it can quote, effectually be challenged only by an immediate appeal. Both of those things are satisfied here simply because if the court waits until the end of the case, whenever that might be, to address these issues, Mr. Bowser will be subject to enduring the entire case without the benefit of any really of his assets. He can't sell the town home. He can't access the $350,000 deposited into court. That will, I think, by the case law that we cited in our brief, work an irreparable consequence. He has income coming in, does he not? Noah has filed for Chapter 7 bankruptcy, and that was noted in the appellee's brief. So at the time of the order? At the time of the order, Noah had filed Chapter 11 bankruptcy, and yes, Mr. Bowser did have income coming in at that time. Over $200,000 a year for him and his bankruptcy, yes. That's no more. Well, okay, but at the time, we need to look at the order at the time it was entered, don't we? We do. And at the order, I'm not familiar, honestly, my firm was not Noah Corp's Bankruptcy Council. I do not know what his income was annually post Chapter 11. Okay, and just to make sure I didn't misunderstand, the Chapter 11 was filed before the order was entered? That's correct. Did he argue that he needed, that he would lack funds to proceed in this litigation if these, if the order of attachment proceeded? No, he did not in so many words, no. The argument, the evidence was presented before the court that because Noah Corporation was in bankruptcy, and because the writ of attachment was sought against what is substantially all of Mr. Bowser's then yes, it would impinge his ability to present a defense. But at the point of the order, no, he did not. He was hoping that Noah would continue in Chapter 11, and that he would be able to proceed in front of defense. Isn't that important when the district court is deciding whether there are irreparable consequences from the, we'll call it writ of attachment? Well, in this case, the district court did not address the issue of whether there were irreparable consequences from the writ of attachment. The district court applied Utah Rules of Civil Procedure 64 through 64C. The inquiry before the court now is a jurisdictional question as to whether the writ poses irreparable consequence to Mr. Bowser. But that wasn't an issue that would have come up for the district court. Well, wouldn't it have if this was going to be so consequential to him? Wouldn't that be one of the equities that should be presented to the district court in deciding whether or not to enter the writ? Well, that's an interesting question because the motion was never presented as an equitable motion. It was presented as a legal motion, one for a prejudgment writ of attachment. So the court didn't consider the functionally? Functionally, what the court entered was, in fact, a preliminary injunction. No, no. Well, it could be both, right? It seems to me you're saying, you've been saying that what was sought from the court was a writ of attachment. You haven't said how there was anything significantly, substantively different. There was, but you've said it's substantively and procedurally turns out to be, in essence, a preliminary injunction. That's correct. So how did the district court not do what was sought? You did say that what was sought was a writ of attachment. Am I correct about that? That's what the judge did was not issue a writ of attachment? That's correct. In what respects did it not? A prejudgment writ of attachment is a specialized procedure that results in a writ. The writ's delivered to a sheriff, the sheriff serves it, and it's against a particular piece of property. The case law that we cite in our brief, I think is pretty legion, that an injunction is a different kind of order. It's an order that applies to the party rather to the property, and it compels a party before the court to do or not do certain things. The district court labeled what it was doing a writ of attachment, did it not? It did. Did you object to that or point out that what was being done went beyond a writ of attachment? No, we didn't have an opportunity to do so. There were two hearings held. At that point, the court was always considering what we understood to be a prejudgment writ of attachment. On June 7th of 2019, the court issued a temporary order that did two things. One, it instructed Mr. Bowser not to dispose of certain aspects of the proceeds from the sale of the home, and then other to continue on with the purchase of the townhome subject to not encumbering it. We understood those to be temporary orders while the court gathered evidence, and then at a certain point later would then issue its order either granting or denying or issuing the prejudgment writ. By the time we got the order, it was at that point that the order granting the motion was first issued, and that was the order that first established the court's ruling that this was going to be what it was. This was how the court was going to proceed. Okay, but in substance, didn't this do exactly what the court had indicated it was going to do? Make sure that the proceeds of the sale of this one home, I think it was, were not dissipated. So, the cash proceeds had to be isolated in some way, and the new house being bought with the anyway. Was there any difference in what the judge was trying to get done between the writ of attachment that was issued, what he called the writ of attachment, and what the judge had indicated would be done? The judge didn't indicate how she would ultimately rule on the motion. After the hearings on June 7th and June 17th, she issued temporary orders doing exactly as in place until she could marshal a decision, a final decision on the motion for a prejudgment writ. My expectation would have been that once the motion was granted, the court would have issued an order authorizing a prejudgment writ, and then the clerk would have issued the writ. Would the writ have done exactly what was done here? No, the writ would not have done that. The writ... What would have been done? What was done here that couldn't have been done through a writ authorized under Utah law? When a writ is issued against real property, it functions as an encumbrance. It's recorded. That means that the property can't be transferred without the appellees here getting a share of the proceeds of that sale. Here, the district court went a step beyond that and simply ordered Mr. Bowser as the party to the lawsuit to not transfer or encumber the property. That means he can't get a loan against the property. That means that even if the property value increases, he can't borrow against that increased equity above and beyond the amount that was charged in the order. That means that if he uses other but in practice, the writ of attachment would have been for the full value of the property. No, that's not how the order was issued. The writ was sought against the proceeds of the sale of the home, and that was computed after some difference in facts. That was computed to be about $850,000. Mr. Bowser paid $350,000 into the court, and then there was a remaining $450,000 approximately. That was what the writ was seeking, was that total amount. That $450,000 was in process that was going to be used to buy a home, is that right? That's correct, yes. The judge said if you get that home, you can't encumber it, right? That's correct. A writ of attachment would have been essentially a lien for $350,000, and that would have in essence prevented him from borrowing against it or using it for any financial purpose, wouldn't it, in practice? Maybe, I don't know. If the value of the property increases, I suppose he could have borrowed against the equity. We're into speculation here. I don't know what would have happened. That's why I'm saying in substance, what the attachment. Am I wrong in substance about the difference? Respectfully, yes. I think so, simply because the property value doesn't necessarily equate to the amount that was encumbered by the court's order. He may well have had the possibility of borrowing against the property. He may well have had the opportunity to sell it if somebody would pay it off. I don't know. What about the restriction on the cash proceeds? That did work. Other than the fact that Mr. Bowser was commanded to do it himself rather than a writ being issued against a bank or a trust company, that did function just like a pre-judgment writ of attachment would have. On that, I agree. Proceed if you want. I think that it's important, and I don't think that it can be gainsaid here, that the way that this writ works, it violates and it's contrary to the procedures that are set forth in the Utah Rules of Civil Procedure for writs. Injunctions compel somebody to do something writs don't. Writs are not enforceable by contempt. This order surely was. And then once establishing the fact that this is an order against Mr. Bowser himself compelling him to do or not do things, there simply isn't a finding, obviously, of irreparable harm to the appellees here because there couldn't be. It's a money issue. It's compensable in money. The bases for the court's order itself are also not grounded in law. The court's determination was that Mr. Bowser or that the appellees were substantially likely to prevail on a claim that Mr. Bowser is an alter ego of Gabriel Management, meaning that Mr. Bowser obtained $4.9 million. But he didn't. And the appellees, I don't think, dispute the fact that this alter ego claim was not pleaded, and it was raised for the first time at the conclusion of oral argument on the July 7th hearing. From there, this unjust enrichment claim, this equitable claim that forms the basis of this legal remedy of a prejudgment writ, that can't be used as an end run around an alter ego claim. Mr. Bowser was never determined to be indebted in the sense of a liquidated judgment. There was no contract other than the implied in law contract, which presupposes no contract at all. And then the remaining host of issues that we raise in our brief. In substance, this order simply ties up all of Mr. Bowser's assets, and it does it by requiring him to do things rather than by issuing the process that the Utah Rules of Civil Procedure would have required. I can see that I'm out of time. Does the panel have any questions that I might answer for? Yes, and thank you. Thank you, Mr. Brough. Mr. Felix. May it please the court, Wes Felix on behalf of Rosa DiTucci and the plaintiffs. I do want to say in the beginning that you made many of the points that I was planning on making, and so I'm grateful for that. I think what's happening... If your voice is trailing off, please speak a little louder. Certainly, Your Honor. I think what's happened in this case is that there's been some conflation in the briefing, and that's as much our fault as Mr. Brough's fault with respect to two issues. One is, what's the standard for determining whether or not there is jurisdiction? And the other is, is something really not just in terms of its name, but in terms of its substance, an injunction versus a writ of attachment, and did the judge indeed satisfy those conditions necessary for an appropriate writ of attachment as determined by Utah law? Those are different questions, and I don't think that Mr. Brough has addressed them as though they were two different questions, and he uses case citations in support of the one to support the other, and I'll explain as I go along, but in the first instance, you have to obviously overcome the threshold hurdle of the jurisdictional question, and the jurisdictional question is determined by really the Carson factors now as dictated by the U.S. Supreme Court, so you have three. Mr. Brough has mentioned them. Number one, does the order of whatever it's called have some practical effect, which is similar to that which would be the effect of an injunction, and that's a relatively low kind of hurdle. You have to see whether something that the judge did in conjunction with the order is injunction-like, and as the fourth circuit pointed out in the Lutz case, that's a little bit difficult to do because every order is going to have some component of injunctiveness about it, so it's going to be a sliding kind of scale, but you have to make that first threshold determination. Then you move to the second, and that is was there a reparable harm, and the third is the decision essentially unreviewable. I think the language that gets my. So in that analysis, let's say that Mr. Brough is able to establish that this has some characteristics of an injunction, and I think maybe it does, although it's a close call. With respect to the attachment of the money, I don't think it does. I think it's exactly like every other writ and differs in no way. With respect to the property, what we asked for, what we wanted was just to get all the money. We didn't want to have some set of conditions set up so that Mr. Bowser could live in his home during the pendency of the litigation but be subjected to a directive not to encumber it or to sell it, but that's what he got because it was pointed out by Mr. Brough, and this is in the briefing. If it were to be seized or we were to get the money, he would be effectively homeless. I don't know if that's true. I'm sure he could have rented an apartment or done something else, but the judge in consideration for Mr. Brough's request allowed Mr. Bowser to purchase the home and live in it during the pendency of the litigation. Having said that, and that goes to our invited heir argument, having said that, it certainly has some character similar to an injunction in the sense that he is prohibited from encumbering or selling that property. That just goes again to the first of the Carson factors. The next Carson factor is whether there was irreparable harm, and Judge at the time of the briefing and argument and the full evidentiary hearing with respect to the writ of attachment, what the consequences of the writ were going to be, whatever they were called. No one raised to the judge at any point in that period the issue of is this going to impair Mr. Bowser's access to assets in a fashion that will either not allow him to live, pay for his daily kind of food and rent, or not allow him to pay his legal fees. And that's an important point. It was never raised below, and there's no indication in the record that that couldn't have been done. As again, Judge Hart points out, the record shows that he was making $259,000 of income that time, he and his wife. Doesn't the bankruptcy petition of the company make it fairly clear that that wasn't going to be secure income? No, Your Honor. And although it turned out not to be the case, I think because Mr. Bowser's operation was essentially a to continue to be paid and there was an order entered into this effect that he would continue to be paid his full salary as well as his, excuse me, his wife's during the reorganization. It just turns out to be the case that the reorganization failed because there was no real business. It was just a con game and they ended up going into Chapter 7. Excuse me? Not long before he quit getting income, that the trustee didn't quit paying. How long after this order was entered? I should know off the top of my head when the Chapter 11 turned into a Chapter 7, I want to say nine months later. So there was no finding and no evidence, and there is no evidence now in the record that he would be made so impecunious that he was not himself and his wife. That just wasn't raised. It's not in the record. And that's an important point with respect to what this panel does. In the Lutz decision, the issue was raised specifically. The court, I think it's in footnote 10, says, well, of course, this irreparable harm is an issue. And if it were the case that the defendant were not capable of paying his legal as a result of being impaired by this attachment or by this injunction, that should have been raised with the district court and it still could. And that's exactly this case. Once it turned out to be the case that the bankruptcy turned into Chapter 7, and if, in fact, Mr. Bowser is telling the truth about his assets, he could have raised that issue at any time after entry of the order and sought modification or relief from the order with respect to his need for an ability to pay, for instance, legal fees. And that never happened. Did the court ever mention that as a possibility? The court did not specifically raise the issue of can you pay your legal fees? But it is in order. Did the court ever mention that this can be modified as facts develop or as events unfold? I don't recall that that occurred, Your Honor. I don't recall that that occurred. This all happened relatively quickly because of the urgency of the situation. This isn't a case where we just came in and said, well, look, we're likely to prevail, so we'd like to get an attachment or sequester some assets. What happened was shortly after filing of the case, we just found out that Mr. Bowser was trying to sell a $2.4 million mansion up in Park City. So we wanted to make sure those assets didn't vaporize. Let me make sure I understand your argument on jurisdiction. There seems to be a pretty bright line rule that there isn't jurisdiction to review a writ of attachment. Yes. But you are not, and what I was pursuing with Mr. Brough, I hope you didn't take more comfort from my questions than you should have. Guidance, not comfort, Your Honor. Yes. I think it's clear that this was not a writ of attachment. And are you conceding that we don't rely on the cases saying there's not an appeal from a writ of attachment and instead relying on the Carson factors? Am I correct about that? I believe that that's right, Your Honor. I revert to the distinction I was trying to make at the outset, but never really got to. And that is, all the cases are pretty clear. The general rule is 1292A1 prohibits the appeal of interlocutory orders, and writs of attachment are among those that have been held not to be appealable, everything else being. But almost all of those same courts have said, if the Carson factors are applicable, well then, in narrow circumstances, strictly construing 1292A1, yes, you have a right to appeal. So then they apply the Carson factors and determine whether it has some characteristics in common with an injunction, whether there's irreparable harm and whether it's effectually unreviewable. So all of those rules stay in place. None of those decisions applying that, I think, fairly clear set of rules implies that in a situation where the Carson factors are applicable and there is jurisdiction, that you treat whatever the order is solely as an injunction and not as whatever it was called when it was first entered. That's what you're talking about when you turn to the merits as opposed to considering... Yeah, when you turn to merits, it's still a writ. What you did was still consistent with... Okay, but on the jurisdictional issue, your position, as I'm understanding it, is that we don't have appellate jurisdiction because the final two Carson factors aren't satisfied. The irreparable injury and not... Well, you can say I'm better than I, but those last two factors, am I correct about that? Yes, Your Honor. Absolutely. That's our position. And as we've stated, it just wasn't ever raised before. There's nothing on the record to support, especially factor two, but certainly factor three as well. So one of the several errors, I think, that occurs in the appellant's brief is that they conflate those two decisions. The first decision as to whether or not there's jurisdiction, and the second decision as to whether or not, in every respect, what was done is really an injunction. So when we examine it, both the standard of review and the criteria applicable to ascertaining whether or not the decision was correct are those that apply to, for instance, an injunction. Those are two entirely separate questions. And I think appellant has just assumed that they're the same and cited to the same cases when they're clearly not. Although, you know, I have to acknowledge that there is a strain among all of the cases in which, if it's determined there is irreparable harm, and that irreparable harm turns out to be an inability to fund legal defense, they typically determine that there has to be some kind of relief with respect to the imposition of whatever the order happened to be. But that still doesn't mean those two different decisions are conflated. And in this case, because the irreparable harm issue really wasn't raised below, the only appropriate thing, to my mind, is to let the judge's order stand. It's a good order. And if they want to raise the irreparable harm issue when they get back, of course, they can do that. They can seek relief from the order. They can seek to have it changed altogether so that they have access to legal fees, if it turns out that, in fact, there's no source of funds. I'm not sure I believe that. They have raised irreparable harm as an issue with respect to the original order. They're not thinking in terms of appellate jurisdiction at that point. Why is it important that there's not something in the record about irreparable harm here? Why is it important that there's nothing in the record about irreparable harm? Why would you expect there to be something in the record about irreparable harm when that's important? Well, I guess two things. I guess two things. In the first instance, to be absolutely fair to Mr. Brough, I think Mr. Brough believed, as did we all, that the reorganization was going to go forward. And for some extended period of time, Mr. Bowser would have access to adequate funds to defend his case. So that's number one. That doesn't mean that as soon as those circumstances change, it's not his obligation to go to the judge and say, Your Honor, things have changed, and we now know that in our current condition, we're not able to defend the litigation. Oh, and by the way, we're also in the middle of this dispute regarding jurisdiction in which raising this issue is an important fact. But that could have been done. Number two, it's not impossibly clairvoyant, as Mr. Brough has suggested, to think about the fact that this might impair my client's ability to defend his case. That seems to me, regardless of the jurisdictional issue, something that you would want to raise with the court in terms of whether or not what they're doing is essentially fair. And that is something you would raise, regardless of whether it's illegal or equitable. I'm over my time. I'd love to answer any questions you have. Does Mr. Brough have any time left on his clock? No, he does not. Well, since we went over with Mr. Felix, I think he's entitled to another 30 seconds if he wants it. Thank you, Your Honor. I think Judge Hart, you hit the nail on the head when you suggested that at the conclusion of the evidentiary hearing, nobody is thinking about foundation for caution factors at that point. Also, when you look at the factors that are considered for a prejudgment writ of attachment, which is what the appellees sought, not one of those factors has anything to do, doesn't mention it at all, with respect to the hardship that a writ would work upon a plaintiff or defendant in this case. Thank you, counsel. Case is submitted. Counsel are excused.